Case number 23-1075, Brookfield White Pine Hydro LLC Petitioner versus Federal Energy Regulatory Commission. Mr. Warner for the petitioner, Ms. Gow for the respondents, Mr. Martin for the intervener, State of Maine. Good morning. Good morning. My name is Matt Warner. I'm here for Brookfield White Pine Hydro. I guess this case will swing us back to something like a global. I wanted to start with the observation today that this case can really turn on whether the word and means and an EPA regulation. The rule we're talking about here, generally speaking, requires a state to include three things when it denies an application for water quality certification. Those things are the specific water quality requirements that those were not met, and if the state thinks it needs more information, like Maine does here, it needs to identify what information could be provided that would allow those requirements to be met if the applicant chooses to apply again in the future. Let's say how it's phrased. I'm going to ask you something. Your argument's about and. I'm going to ask you about will not comply. Does will not comply. Let me take a step back. Will not comply does mean they need to show that it will not comply, but that there are a couple sensible ways to understand what that could mean. I don't want to get sensible. I want to get a plain text. So they have to be able. How can someone, if they don't have enough information to decide whether something will comply or not, then be able to This would be the way water quality certification works, Your Honor, is that it's. I don't think so. I think the way it works is that normally states find just as it says in Roman at three that the company, you, for example, in this case, have not shown you haven't shown or assured that the discharge will comply. That's very different. Saying someone hasn't met their burden of proof to show that it will comply is very different from a state bearing the burden of explaining why it will not comply. So that's not how water quality works. Generally. Well, the state can meet that burden by simply identifying the requirements that are not met that with the information information to know whether they're matter. They don't have information yet to know whether they're met. Well, if I could bring it to the specifics of this case, then I can speak in the in the abstract again. In this case, we're talking about a 6000 page application for water quality certification. One that was more comprehensive than a prior application that the state had denied in great detail over 54 pages, stating specifically, which requirements were and were not met by that prior application here. The state had more information. And yet decided to draft denial. So, the draft and this was a draft denial and actually lock it down yet. It was just correct. It wasn't a final order, but it was the state saying, find the findings there. So, okay, there were findings over there. Correct. There were not findings locked down, but there were findings that the state made over the whole point of drafts is that we can think about it some more. Yes, and so you had a long application. Correct a long application with great detail. This is not my, I guess my point is that information. Right my point is that in part, because you just dropped a whole new whole new. Information on us just a couple of weeks ago that we haven't yet had time to analyze. How are they supposed to say you just dropped this new information on us? They called a late stage submission that we have not yet had time to analyze. How are they supposed to in 1 breath say that and say, we can tell. That you haven't given you that you're, you're without. More information, it will not comply. How are they supposed to do that? In this case, the state could have issued an order that met the requirements of this regulation. By saying, there are federal processes ongoing things that said in this order. And so we don't have enough information yet until those processes conclude. But is the, but is the not enough information only the federal processes or what you all have not provided. We're, we're obviously not challenging the legality of the state saying we don't have enough. We don't have enough information premise for the denial. We are challenging, though. The state's ability to do so without providing the information required by this rule. In addition, and I'm suggesting that that was perfectly possible here because the state could have said. We have the 6,000 pages from you as we decided last year with a, with a less comprehensive application. With the information you've provided today, you don't mean this requirement, this requirement and this requirement. Under state under state law, here are the reasons why we haven't had time to analyze this new information. They said that. We haven't this was late stage submission.  That yet, how are they supposed to then say, nonetheless, we can definitively assure you that it. I get maybe they can point to the requirements, but for purpose of Roman at 2, how can they say. Colorably and with integrity that it will not comply. If they haven't had enough time yet to analyze, I think there are 2 points. 1 is the supplement we're talking about here. The, the quote, late stage submission. Was a fairly brief. It was a 60 page supplement. It sped up the timing of certain measures being implemented by white pine, but even setting aside. They said on J. 294. these have yet to be analyzed. Correct and so even setting that aside, the state didn't have time assuming the state didn't have time to analyze it. Right? Then the state still could have said, but the 6,000 page application we do have in front of us doesn't meet these requirements. You need to reapply when you, when you have more information, including the supplement that we didn't have time to analyze that would have been. Oh, so they were supposed to. So, what you say, they waived here was just their ability to respond to the initial application, not the application adjusted by the September submission. Well, the, the just said, if they waived anything, they just waived the response. To your initial, would you say 6,000 page submission, but they have not yet and you don't dispute that they have not yet waived or have and have properly not yet analyzed. That 6,000 page as supplemented by your September submission. I don't dispute the state's ability to deny for lack of information and perhaps to do so on the basis that information has been late filed. However, what the state waived here was its ability to issue water quality certification at all for that project. The reason being the whole project. I'm very confused. I'm very confused what. Were they supposed to respond to in compliance as you read this rule? Was it the problems with the 6,000 page initial submission? But, of course, it was perfectly fine for them to say we haven't had time to analyze the supplement. And so they were supposed to talk about how. A no longer relevant submission didn't comply. That's what you say. They had to do and they didn't do it. They waive their ability to. Respond to the no longer relevant submission because you yourself. Have changed it. Is that your position? We certainly don't care. I'm telling you, I just I'm describing no description. What's well, several things right? First of all, it's not it's not that the initial submission was no longer relevant. That was the real licensing proposal. The state had to consider this late stage submission made minor. It was a minor tweaks. They came after they had given you a draft. And they were informed by at least conversations you were having with. The marine service on on their biological opinion. I don't think these were just commas. Did it change anything about how the hydropower program would operate? The late stage mission sped up the certain fish passage measures that were already proposed timing, which would be relevant to the safety of fish going through. It, it seems to be yes, but the point was relevant to the concerns that had been flagged. Yes, we're not disputing that it wasn't an immaterial. It was a material material change. Sure. And we're not disputing the materiality of 1000 pages of this late stage submission where. The state's denial by not providing the details required by 1 and 2 of this regulation left Brookfield without any idea what it needs to do to actually obtain certification. Whenever you apply it, you knew you still had your, you knew they still hadn't considered. Your submission as amended by the late submission, you knew they hadn't even considered that. So you might as well wait for them to consider that. You knew that was still pending before them. Correct. But the purpose of these rules is to tell the applicant what it needs to do to reapply and obtain certification. What information it can provide, how it can adjust its proposal. And the state was obligated to consider it was fine. If they had, they could have said. That's late, so we're not able. To consider that, but thank you. For giving us now an updated submission. The clock reset if the state truly couldn't analyze. These minor tweaks in the supplement. Okay, it can't be both minor tweaks and material changes for purposes of salmon preservation. You can't have it both ways. Correct. All right. And you said you made changes for that in your view would. Promote the salmon preservation concerns that they had. Correct these are adjustments to the time anymore. So, if the state truly, you don't dispute them when they say they had yet to be analyzed by the department. Right? You're not impugning their good faith. I'm not disputing the department's good faith, but I am disputing that there. The department's view and 1st view that department was not required to say what about the applicants proposal had before it for the full year provided under the clean water act. What about that proposal? Failed to comply with state water quality requirements. Where does the rule say. That when the application has been. I'll just call it amended. Maybe you have a more a different term, but has been amended, updated, supplemented, materially changed. And that there's something in this regulation that requires them. To go through these steps as to the. Old now displaced application. The application wasn't old and displaced your honor and this, the supplement to this place now by the 1 that is, we have version. We have a application a. An application B is an application, but changed materially changed. By the September submission, and I think you've agreed. That they can't be deemed to have waived their ability to respond. To that, what I'm going to call submission B. Which is a plus the material changes from September. They can't be have have waived that their ability to respond to that. Which must mean it's still pending before them. What your view is, we can lob all this stuff in late and then we still expect you to answer this thing and spend your resources. Analyzing systems and aspects of its operation. That are moved this is your position. Our position is that it's, it's consistent with it's routine. In water quality certification and for licensing of hydropower projects in general. And especially on rivers where there are endangered species that consultations are ongoing throughout the licensing process. And the result of those consultations is that proposals do. Change and evolve over time, so it's not unusual for over the course of a year, a state has to consider an application for water quality certification that there would be supplements filed and that the. Um, the applicant Brookfield here would inform the state answer judgment. Let's questions with respect to the clock. You know, restarting so how does that fit into what you've just stated if it's not going to. Be unusual for all of the supplements along the way, or for you to get a denial without prejudice, and then withdraw your application and then supplemented or refile. Then, when does the Clark restart? Well, the state has a year to act on an application for water quality certification. It had that application here. Perhaps. I don't think there's been any case law on this 1, but perhaps the state is permitted to disregard regard supplements, like the 1 filed in September by Brookfield here, but still have to act on the application itself. I mean, that makes no sense. You yourself have identified whether it's main concerns or you're concerned about the fishery service. You guys have already decided we're not going with plan a. We want to go forward with plan B. Lots is the same, but as to the salmon concerns. Material changes have been made. We wish to go forward with plan B. But I've taken your position to be, but this regulation. And this doesn't have anything to do with the word and as far as I'm concerned, requires states with their limited resources. To 1st, spend a whole lot of time telling you what was wrong with plan a, including probably the parts. You've already changed that's what they did. That's the problem and by not doing that. They don't have any authority to act on plan B. That's your position. Yes, my position is that my position is that the state needed to identify what was wrong with planning. That's important, including the parts that were moved. Well, so plan B is a material change and slightly more protective for Atlantic salmon. It's not true at all that had the state provided the information required by 1 and 2 here. That wouldn't be helpful given the supplement to the proposal that could requiring just quickly could requiring. What the state thinks you should do essentially just revert you back to what the specifications are, like, almost an application process. You know, just the various specifications that you're putting forth the application for in the 1st place. Like, they, they're deeming it insufficient information. You know what the specifications were required. You don't have some of those there, so why would the state do anything, but just revert back to what the specifications were the problem judge childs is that we, we have no idea what the specifications are here because the state's position on that has evolved over the past. For years, especially when we're talking about this passage, this leaves us with the real world problem that we simply don't know what the state is requiring now a problem that would have been solved had the information and 1 and 2. And provided now, specifically the draft denial, which we spoke about earlier. Suggested that the state would impose a 99% passage rate for Atlantic salmon up and up and down the river past the. Damn, following that draft denial, the state. Filed documents with, noting that it instead wanted something called a nature like fishway, which routes a portion. The river around the dam and later filings in earlier filings, several years ago, the state called for outright dam removal is the only way to satisfy state water quality standards. The result is that. Because the state's position has been constantly evolving on what's required for fish passage. We simply don't know what did you want to hear in September? Propose. Which of those options, or was it a different option altogether? It's. Our material changes in September were the result of consultations with. It's a different option altogether or result of consultations with the federal resource agencies. And and landed on a fish passage standard that has been. Endorsed by the federal agency through a biological opinion last year and the draft. Recently, these were entirely different from what the state has said it will propose. The state has also at times suggested it will follow. The lead of the federal agencies, but we simply don't know which of these the state's going to land on. So, the fact of the matter is that you didn't give them time to evaluate your new proposal. But you still think they should go back and evaluate your original proposal. Does that help you since that's no longer what you're planning to do? Because even whatever they want, you still got to make. The fishery service and the, and at least in the. Content with what you're doing as well. So why does it. I don't understand how them saying something you're no longer planning to do. Shouldn't be done information because you already decided we're not doing that. Whether it's from their input. Fishery service input, Burke input all of the above. You're not doing it everything in the original proposal Brookfield is planning to do just a few things that they're doing a little sooner than they said they would. So, the, the material, the adjustment was and that you adopted an option that. Had yet to be discussed because it was something that you got the idea, I guess, from the fisheries service. We didn't have the. The was further down the road at that point. And so it was, you sort of did door number 4. Correct your honor and if, and if the state had, let's just say if, if this denial had. Provided the information we wanted, it would have said denied for lack of sufficient information. It. Presumably would have mentioned the supplement that the state didn't have time to consider it and then it would have said, it did say correct. And then it would have said failed to meet. This particular wildlife or habitat standard under state law as the draft denial did in 2021 and it would have said, because so you already knew that you didn't need that information. Well, as I just explained, we didn't know exactly what would be required because the state has changed its position repeatedly. And so we have to take some requirements. You have to tell you why you're not meeting a requirement. Too many fish are dying C, and then site the specific requirement. Correct and had the state provide us with the die. Well, I'm a nice for a minute to. Yes, I don't think the state was required to provide with. Exact specificity, its requirements, but presumably the state could have requirements. I guess there's a requirement in law about affecting the salmon or something or fish protection and why it won't comply. And then had the state here identified the. Which of the 3 or 4 state water quality requirements related that fair on fish passage of Atlantic salmon in particular, which of those were still at issue with this. Updated and more elaborate proposal that was more protective of fish. And it had no, no, no, wait, sorry. Are you seeing the, they also had to go on? Did you just say they had to go on and say why they still aren't met by your updated proposal? No, forgive me this. I'm speaking. We're not saying that the, the, the, the real licensing proposal that the state had a year to act on, even setting the supplement aside was more elaborate than the proposal that the state had previously. I guess, issue the draft and I'll right. Right. And then you did another 1. and so the state could have said. So, the state could have said these could have said this 1, 2, 3, or 4 state water quality requirements related to fish passage. All right, are still not met by this proposal with the information provided. Because 95, 95% of salmon need to get past the dam or because we think a major, like, fishway is required to meet state requirements. That would be ideal for you, but I don't know where they have to do that. They just have to say why it will not comply. And I thought you just agreed if they say too many salmon will die. That would suffice. I think even providing that information would have been helpful because as it currently stands. Um, if we simply don't know. If the proposal that the state had in front of it. Will meet state requirements or not, or if the proposal that is being considered by. To move this is what I keep struggling with states have very limited resources. And often far left on the federal government. And it's no longer your proposal. It's no longer the proposal you're putting forth. You've changed it in September. Well, practically speaking, it gets us 99% of the way there. These minor material adjustments to the timing of minor and material. I'm sorry. Yeah, not not working because you said it was a whole new option that they hadn't even considered. But it had been endorsed by I don't know any of this is true. Just assume it for these purposes by the fishery service. I don't think it's fair to call that minor material minor. But I think it's what I guess 2 points 1 it. It would still be helpful and give as this rule was intended to give Brookfield the information. It needs to know if it needs to adjust this proposal at all to meet state standards, or if it can rest on the proposal before the federal agencies. That's what that would be. That's what analysis of your September. Submission would certainly be helpful for. Well, if the, if the earlier submission from the prior October. Had the state had said this doesn't meet state standards. With the exception of this 1, which you knew from the draft denial that. You were probably in trouble, but you wanted them to say definitively. We met what we said in the draft denial. Well, unfortunately, we don't know from the draft denial because the. The broader political context here led the state to also suggest that it would. Abandon the 99% standard and follow the lead of the federal resource agencies, something we don't know if that's still true or not, because this information was. Wasn't provided on the. Question about changes. Can you give me any general guidance on the question when. The submission of a supplemental of a supplement. Will or will not restart the clock. Because, I mean, it just seems really obvious if you're just. Dotting an eye or crossing a T. Like, fine, maybe the original deadline holds, but at some point. The supplement will be so substantial as to just. Overwhelm the original submission and it just can't be that. Nothing changes at that point. So how do we distinguish those 2. Yeah, so when when, I mean, Brookfield view remains, and this is what it said when it filed the supplement with the state that it was. That it was not material I'm taking it was material as a. I'm taking it for the sake of argument here, but Brookfield did say when it filed this with the state that it was a non material supplement that made minor adjustments to the proposal. The state then. Found in his order, a decision that is not challenging today, which, which is all I'm taking this materiality for the sake of argument here that it was that it was material and significant. That's something Brookfield. Disagreed with, and could have, you know, that that's something that would have to be determined on a case by case basis. Presumably at some point, it doesn't have to be determined. You agree it's material and significant. I, I agree it doesn't have to be determined this case and I, and I don't believe this would be the court. I'm sorry. If it, if, if we, if we're taking the case on the assumption that the changes are material, why wouldn't they have started a new clock? Because this regulation either way requires. The state to act on the application that had before it. For a year is, I guess I'm. We're judging likewise, then if you've materially amended it. We have more questions I just 1 more. So put aside the. Put aside the amendment, let's just talk about what the reg means. So suppose. If we, if we read the and as an hand. We sort of have to read. We sort of have to read will not comply as something like, you haven't met your burden of proving will comply. Right? If we do that, maybe they have to show, maybe the denial has to show all 3, but I mean, what's the point at that point? They're just going to say, here's a list of. All of our water quality standards that we care about. And the reason why. You haven't met your burden of proving compliance is. We haven't had time to assess this and that's our. You know, list list out all the code provisions for Roman at 1, and that's the explanation for Roman at 2 and there we are. And it just seems like a. Kind of pointless exercise, and you're discussing when the not denial is due to insufficient information as here. Yeah. Yeah, so I think in that case, the, the language in. Section 3 does a bit of work too, and requiring the state to describe the specific data information needed to assure that the discharge will come. Will comply with water quality requirements when you combine those 3 pieces of information, you must know what information you need to, you'll know which requirements you failed to meet. And why, even if they didn't meet your burden, but then you also know which what specific data information the state needs. So you can meet that. I guess I'm, I understand there's a question about how much. Information Roman at 3 requires, I guess I'm more focused on the question of. What work Roman at 1 and 2, we're doing. In a kind of case like this. Well, I think in a, in a case like this, we at least know which specific water quality requirements. We're talking about it would give us at least some idea as these rules were intended. To ensure of just going to list all of them and say, we, we don't know whether or not there's a problem because we haven't had time to. Assess your submission, if that were true, and the state truly didn't know which. Whether any requirement were met, then it could do so. However, that's. Not the case here is something we know again from the draft denial or multiple water quality requirements were met. And some weren't and so knowing what specific requirements were at issue would at least give the applicant some information to form a new application. Say, we know that we, so are you agreeing that the draft denial is actually incorporated in the main session? So, we know that from the draft denial. No, your honor what we know from, you know, I don't agree with incorporated because it was simply referenced in a footnote as a background fact. I know that. Then we don't know that for purposes of main decision here. We know that the state could take an earlier, less comprehensive version of the same. Realizing think proposal and go point by point and identify which requirements were met and which were not. So, there's no reason it could not have done the same here. Is that required by 3. Just by Roman at 3, you haven't challenged the compliance with Roman at 3. No, we do we do challenge the compliance with 3 as well that the state said that it would benefit from the conclusion of the federal processes. That's not the same as identifying specific data and information that Brookfield should provide to assure that is discharged will comply. From this project will comply with state requirements fighting about the work and which wouldn't matter if you're challenging Roman at 3. Yeah, I think that the, the denial plainly doesn't include the information required by 1 and 2 on its face on the easiest way to overturn. The decision of is to decide that and means and and 1 and 2 aren't there. We also think that 1st decision is unsupported by evidence in the record that 3 is satisfied. Yeah, thank you very much. Thank you. Good morning, your honors Angela for the commission. I'd like to pick up on a question that judge asked 1st. Which is, if this regulation says, will not comply. How can a state that doesn't have enough information. To make a determination show that the project will not comply. Or identify which requirements that it will not comply with. That's exactly on the point. It doesn't make sense to read this regulation in the way that. Brookfield does in the context of this regulation and what a state must do. When it makes a certification decision, it's consistent with also how the itself. Reads this regulation, as we discuss on pages, 36 to 37 of our brief. EPA can serve as the certifying authority for waters that are not subject to any states authority and in that role, EPA has to follow the same regulations that states do, including 121.7. And when issues denials due to insufficient. Information, it only makes the findings required by subsection 3 and not those in 1 and 2. And it explains that the missing information needed to assure compliance. Under subsection 3 is also necessary to identify. Which water quality requirements will not be met and explain why that is. The regulation doesn't. Make a whole lot of sense. I mean, you have to do 1 of 2. 1 of 2 creative, you have to impose 1 of 2 creative readings on it as I see it. You either have to do what you all would like to do, which is say that something in the form of. Want 1, 2 and 3. Means 1 and 2. Or 3, which is pretty weird. Right or or you have to read will not comply. To mean hasn't been proven to comply. Which is also a little weird, but am I thinking about the choice the right way? And why is your. Spin on this less implausible than the other 1. I generally agree that it is a choice between those 2 readings that you've put forth and I would say our position is more plausible because it's also supported by the text syntax. In the context of the regulation as well as the statutory purpose of section 401 and its waiver provision. It's also, I mean, I guess the problem with will not comply is that. Roman at 3 uses the exact language that they admitted in 1 and 2 uses that they. They assure that the discharge will comply. Does that reverse? Burden things so not only would we have to read will not comply to mean. What Roman at 3 says, we'd have to defy that. They know how to say it. When they want it, I mean, it seems to have been a deliberate choice, so it's really. Even harder to say that will not means. You haven't assured that the discharge will comply. I agree with that your honor and I'd also point out that whereas subsections 1 and 2, they reference each other. Roman at 2, it says will not comply with the identified water quality requirements and those were identified in subsection 1. But in contrast, if you look at Roman at 3, it says, will not comply with water quality requirements and it refers there to the requirements in the general sense and not to any specific water quality requirements that 1 and 2 would require. Also, I point out to your point, judge catches that the syntax here supports the reading of this regulation to address 2 separate lists of criteria. Subsection 3 is set apart from the others by its own conditional clause. It says, if the denial is due to insufficient information, the denial must describe. And that indicates that it refers to a different type of denial than what came before it. Also, it's drafted subsection 3 as a complete sentence that stands on its own and can be fully understood by itself. Unlike Roman at 1 and 2, which are both dependent clauses, which are sentence fragments. Sorry, your sentence fragments. Yes, I got it. Correct. Turning to the context, it simply doesn't make sense to require the findings in 1 and 2 when a state doesn't have enough information to make those findings. And as your honors have honed in on, the key language here is will not comply from Roman at 1 and 2. The regulation, as we understand it, only requires identifying the standards with which the project will not comply and not those that it might not comply with. To conclude otherwise would require the state to make 2 conflicting findings. It has to conclude that the project will not comply with requirements under subsections 1 and 2, while simultaneously concluding that it lacks enough information to draw that conclusion in the first place. But the Clean Water Act, as its general premise says, meet all 3 requirements. So, by us just focusing on 3, just give me your general thoughts about a remand to require that there be specific information as to why will not comply with 1 and Roman at 1 and 2. Well, I think if the court were to remand this to allow further explanation on points 1 and 2, I think Judge Katz's point that this is essentially then a pointless exercise of listing every plausible water quality requirement that the state has in simply saying, well, we didn't have enough time or information to evaluate the substance of your proposal. And therefore, we can't reach a system of determination. If the point of this regulation is, as Brookfield says, to provide the applicant with notice of what it must do, what information has it been provided if we did that to simply list out requirements and say that there was not enough information to make that determination? You mentioned sufficient time. I know it's not a FERC regulation, but does FERC have a view or experience with understanding when there's a new submission just a couple weeks before, 3 weeks before the deadline here, and it's, for our purposes, seem to be material and significant changes. Does that restart the clock? I'm just, I'm not even sure which, which submission we're acting on, or FERC was acting on, I mean, or that they're talking about here. It's very confusing. But if it restarted the clock, then all of this is sort of a pointless exercise, because who cares if they waived the denial, their ability to act on a moot proposal or supplanted or replaced proposal. My understanding is that there's no automatic way that the clock resets, even when there's a very late stage in material modification to the application. But the case law from this court and others confirmed that what Maine did here is exactly appropriate for the circumstances. It issues a denial without prejudice, that's not on the merits, and says you're free to resubmit your application when you have the information that we need to make a merits determination. And that's in, for example, Turlock, where this court recognized that when environmental review is still ongoing, as it is here, a state that denies without prejudice, because it doesn't yet have the information that it needs, necessarily acts within the meaning of Section 401 and doesn't trigger waiver. Doesn't have sufficient information can be a product both of insufficient time and obviously content of submission. Insufficient time can itself be a reason they yet as yet have insufficient information. That's my understanding of what insufficient information would encompass. And I believe... Maine said it can mean that. Yes, correct. I'd also like to address a question from Judge Childs. I believe you asked, is it just information from these federal processes that the state needed or also was there information that Brookfield needed to provide? And my understanding that it's both. It's not just the biological opinion in environmental impact statement, but also additional details about Brookfield's proposal. That the state needed to make its determination. It's worth noting that after Brookfield supplemented in September, both the commission and the fishery service needed to request additional information from Brookfield to fill in the details of their supplemental filings. And one example that is on JA 304 through 308. Something about the... So after Maine issued its decision and then Brookfield sought FERC's review of that decision. There's no indication that Maine participated in that proceeding. Is that right? Is that how they normally work? Maine doesn't seem to have been a party to the proceeding before FERC. I don't see that usually, you know. FERC always describes who argued what and unless I'm missing it, did Maine participate? So... Do they have a chance or is this sort of you take the order and it just goes to FERC and FERC and the challenging party deal with it? I believe Maine didn't participate in the sense of that it filed some sort of, you know, we're hearing requests to the notice that the commission issued confirming that it's denial complies with the requirements of 121 7E. But it did submit in December of 2023, the copy of the draft denial and in the cover letter, transmitting the 2021 draft denial explained why it believed its denial met the requirements of 121 7E. But I do want to also make this point that you touched on a point that this entire process is kind of unusual. Before the 2020 rule, the commission didn't have this formal role in verifying the content of a state's denial or certification decision. So this is all sort of new territory for the commission as well as to, you know, what do we need to include in the notice? And then how do we interpret this regulation as to what needs to be within the decision? I'm just trying to figure out, because Brookfield argues that if it's right, as to its reading of the regulation and the content of Maine's order, which really doesn't, I mean, it says here's our draft. FERC said it said here's our draft denial and that would meet one and two. But for the most part, if their position is that they didn't comply with one and two, which is at least a difficult decision, that the consequence is waiver of their ability to act at all on this project, other than informal input in the federal system, or maybe filing a brief with FERC at some point. But they've lost this sort of distinct statutory role. And I'm just trying to figure out where my assumption, I guess they'll tell me if I'm wrong, is that given both the text of the statute and our decision in Turlock, that Maine would have some arguments as to whether that should be the consequence. Whether to the extent the regulation provides that consequence, it's consistent with the statutory scheme, either generally or particularly as applied in this situation, when a whole new material and significant submission is submitted at the last minute so that it doesn't have time to review. But it sounds like when they went to FERC to sort of see if they check the boxes on the regulation, the state doesn't show up as a party there. They sort of turn in their record of decision maybe. Is there any point in the process when that argument would be made? When agency or courts would be able to assess that question? We don't really have a briefing on that remedial question here, which seems to me, as you said, pointed out, Turlock. And then the oddities of this case with the material and significant change just a few weeks before the deadline. A substantial question that I assume Maine would want to contest. I can't speak to that. I don't know for certain whether there is some sort of formal way that a state could, you know, submit briefing on their position as to whether their denial was sufficient. Or if the remedy should be. Or if the remedy should be waiver. Or if you're a free man to explain yourself better like we often do. Yes, I'm not aware of a case specifically in which a state certification decision has been. Remanded back to the state for additional explanation, but. I, I don't think that the, the regulation. Would agree with Burkeville, would we still then remand to park to address. Remedy. Or is that just get decided here? If this case were remanded to the commission. The commission could, if it's on the grounds of Burkeville was right. Obviously, if we, if we agree with her. The commission could provide further explanation as to why the findings in 1 and 2 are met. And what the appropriate remedy should be. The appropriate remedy, I, I'm not certain your honor. I believe. That if, you know, the finding on remand is that the subsections 1 and 2 aren't met. Then in our interpretation of the regulation is incorrect. Then the consequence would be waiver. Well, only if. The regular that's just a regulatory that's in the regulation. There's nothing in the statute that says. Waiver in this context, because the statute isn't clear as to when. New submissions count and restart the clock. It just says you have to act all the statutes that you have to act upon. And take it the main position. And said, you have acted upon. Yes. And so I'm just trying to figure out procedurally where. Dispute about the consequence, if they were to be found to violate. Would be sorted out and what they need to raise that before first. I'm not certain your honor. I apologize. Questions. All right. Thank you very much. Thank you. Good morning. May it please the court. Robert Martin. I think it's actually afternoon. We're very close right on the cusp. Good morning. Good afternoon. May it please the court. Robert Martin, assistant attorney general on behalf of the state of Maine. This case has serious implications for Maine. At risk here is a waiver of Maine's authority to impose mandatory conditions. In a decades long license to protect state water quality. Today, as Brookfield's. For cap for license is continually renewed on an annual basis. Brookfield is free to submit a new application for water quality certification to the department. Giving the department the opportunity it's entitled to have under the clean water act to evaluate. It's 11th hour submission from Brookfield on the last application. And having the benefit of the critical information from federal agencies. It's now becoming available. Brookfield also indicates that this Roman that three. When you have the broad term of insufficient information could just lead to delays by the state as well. Particularly when you don't give the reason for indicating that it doesn't comply with any regulation. Well, we think here the delay concern is, is minimal in its denial without prejudice. The state didn't just identify in some information, vague information that's coming available at some point in time in the future. It identified specific federal information. It was absolutely and undisputably relevant to Brookfield's application. That it knew from representations from FERC and the fishery service that would be coming available imminently. So there was no issue with delay here. Particular provision on a case by case basis. That's right. That's right. Your honor. They made. They can answer if you can't. But have they maybe they would have made them to you. Have they made more changes that you're aware of now that there is a biological opinion, at least a draft EIS out. If those changes happen, they would have been happening on the FERC docket, not before the state agency. They currently have no application pending before the state certifying agency. So I'm not aware if they've submitted updates to FERC in that sense. Did the denial orders rest more on Maine's being put in an impossible position with this last minute supplement or more on just Maine's view? Gosh, it would be nice if we could see the biological opinion and all the forthcoming. Your honor, I think those are equally important grounds. And standing alone on both. Yeah. If you take the federal forthcoming information out of the situation and you just have sort of 11th hour document dump on the department, that would have been a standalone grounds. If you take that out and you just look at the forthcoming federal information that's relevant and specific to concerns that the department had about the pending water quality application, that's a standalone ground as well. We don't have to decide whether either of those would be sufficient because they were both relied on. Here is your position in this case. That's correct. Your honor. Although one can imagine the latter situation is one where the regulation really was trying to get the states going, going to light a fire. Yeah, the document dump one is more concerning. That's right, your honor. And while that wasn't in the context of like these reviews are always ongoing, there's always more you might like to assess. Sure. And while that wasn't the exact issue that was addressed in this court's Turlock case, that was about forthcoming environmental reviews. The court did acknowledge the potential slippery slope of always relying on federal information. We agree that these can be fluid processes, but here the likelihood of the state kicking the can down the road on this was minimal given that we knew, again, the specific timeline, the specific information and its relevancy to the application. If they had made this September submission, the what you all call the late stage submission, if that had been made in six or eight months before. And so really all you wanted and you'd been able to evaluate it, but all you wanted was a few Alphonse will keep waiting for the government to go federal government to go first. You'd be in you really would be in a weaker position, at least under this regulation, because that seems to be exactly what it wants to say. You are a state. You have your independent program, your independent interests. That's what your role is about. And you need to let us know what the state interests are. The feds can figure out what their interests are, but you all need to keep marching and not keep waiting for someone else to go through the door first. That's true that it is the state's authority. That's an issue in this case, but this is somewhat of a unique and specific position position that we find ourselves in where the federal agencies are looking exactly at the same thing. The state wants to be looking at as well, which is under state law. They're looking under federal law and you are the expert on state law. That's right. We are. We do have expertise in state law. Some of our agencies do. But also, I mean, the state, it's well within its discretion to make a decision that it can withstand scrutiny in in court. And, you know, the state didn't know what this forthcoming information is going to say. And it may be helpful or it may be hurtful to the courts or the state's case. And in this case, it made the decision to wait on those, knowing that it was going to have specific consequences for the fish passage issue, which was the primary issue with Brookfield's application. Do you have thoughts on the it just struck me that the remedy. I get the regulation says if you don't comply with the regulation, reach out until you waive it counts as a statutory waiver. Is there maybe being agrees with that reading that the regulation says that I guess you'd have to agree with that, that whether that is lawful under the statute and under our Turlock decision. Is there a place where and when maybe means things, that's fine. That is a consequence. And then I'll be quiet. But if Maine, that's something Maine would want to contest, certainly on the case, at least in the situation when you have a last minute material and significant submission. What where and when would you be able to raise that issue. Sure. So, to two points, Your Honor. One relates to what is allowed by the statute. When you look at this particular rule. Obviously, this rule has been replaced by a new rule in full candor. The state of Maine participated with many other states challenging the validity of the 2020 rule and this provision in particular. That's not an issue in this case. Again, the that the 2020 rule has been replaced. It was dismissed without prejudice to renew challenges. Should it be revived in the future in the northern district of California? So, we do we did challenge the consistency between an actual application of that regulation. No one seems to dispute that regulation governs at least the submission. Whichever the submission is before us, that submission. And so, if they're right, regulation prescribes waiver. And I'm trying to figure out. I don't think there's much ambiguity to the regulations consequence, but in the text and case law of the statute itself, at least in this circuit, just this question arose to me whether, in fact, that's a remedy that could lawfully. I mean, I guess we remand for them to apply it to make a waiver determination. You would seek review of that on the grounds that the waiver is beyond regulatory authority. Assuming that the court agreed with all of Brookfield's interpretations, what the regulation prescribes in that situation is a waiver of state authority and that could be a remand to FERC to make that sort of determination from an order from this court. What I would be concerned, we may renew challenges at that point in time on the remedy to the remedy, because maybe you could do the whole regulation. You're right at that point. Well, yeah, it's a whole regulation. I think what remedy we would have serious concerns about would be in some iteration, it going to FERC and then coming back to the state. As has been discussed at length here, there is a regulatory or statutory deadline for the state to act under the Clean Water Act, and that's one year. And I would be concerned that any remand that finds its way back to the state would somehow bring up concerns that maybe the state, you know, it's well beyond the state's time to act on this application. If it goes back to FERC and we say, and means and, so figure out whether this complies with regulation under that reading. And they look at it and they say, and you all would have your arguments, but if FERC were then to say, yeah, it's, it violates the regulation, your authority is hereby waived. Your position is you could then come to this court to challenge that decision because you have a laundry list of objections to the regulation. Sure. One of which would be that that waiver remedy is appropriate. If it went back to FERC for a waiver determination ordered from this court, we, I mean, we have to look specifically into the law at that point, but I think that's a remedy that we would consider is whether the appealability of a new FERC order that would waive means authority. And then the question is whether imposing waiver as a regulatory matter was within EPA's statutory authority, given how the statute talks about what acts are required to be addressed in Turlock and that was met here. Right. I think you're correct that that characterization is correct. And again, for all the reasons my colleague mentioned, you know, we don't, we don't think the court should, should do that here. But getting back to the waiver process generally, if you were to review the application and you felt like you had enough information to act on it, however, you still wanted the biological opinion or the EIS statement. How does that process work with respect to informing Brookfield? But yet, is it approved potentially on the condition of those other things? So, under the Clean Water Act, there are certain actions that the state can take on a water quality certification application, all of which constitute an act within its one year deadline to avoid waiver. It can approve an application, it can approve with conditions, it can deny an application, or it could deny without prejudice. And it took the last choice here, which was to deny without prejudice, waiting for more information. To approve with conditions here wouldn't make sense because you need to know what those can, the agency would need the information before it to make a decision about what conditions might attach to that application. It couldn't include conditions in an application based on information that doesn't exist yet. You kept referring to 11th hour dump, essentially. So, is that the rationale or reason for why insufficient? Because you don't have enough time or are you looking at it substantively and believe there's something? Yeah, that's a good question, Your Honor. So, we think that the insufficient time is the same as essentially tantamount to insufficient information. If you don't have enough time to digest the information, then you might as well not have it. So, that's the bucket that we put the last minute. You say they're the same, but then why not at least state that as your rationale? Because to me, time and substance is two different things. I mean, I think the state did, in its denial without prejudice, say it doesn't have enough time to process this information. And just as a matter of process before the state agency, when they get critical information on an application, they reach out to their expert agencies. They reach out to stakeholders to let them know they've received updates and they want to hear what folks have to say about this sort of thing so they can act on the best available information. But if you say that it's based on insufficient time to process, then you don't have to go then into these other portions of the regulation that state what would be needed, etc. I'm not sure if we said the word insufficient time in the denial without prejudice. It has yet to be late stage filing. It has yet to be analyzed. Right. So, I think that can be read as insufficient time. Thank you, Your Honor, for that, to process the information. But my point is that you wouldn't then need to say what was needed because you're using insufficient time as your basis. I mean, you're right, Your Honor, that may have been a way that the state could have framed its denial. But again, in the interest of transparency, it wanted to let the public and the applicant know what was happening. They had, let's just assume their September submission, what you all call the late stage one, had been filed in sufficient time from Maine's perspective to analyze it. And you said, it looks great to us. We're signing off on it. And then, this is just a process question, and then three or six months later a biological opinion comes out that says this is disastrous for salmon. Maine doesn't understand how this technology works. Here's why it's disastrous for salmon. Is Maine's role done? Or if they have to completely change what they're doing to address a biological opinion, does it then come back to Maine again to get approved? Or is it Maine's out and then you just have input maybe with the feds or something, but your job is done? We think the state's role in the federal permitting process under the Clean Water Act is clear. So Maine would have the authority there to impose conditions based on what it thought would adequately meet state water quality standards. I'm not sure if that means, and maybe this is really the crux of your question, if the federal agencies want to go further, what the state would do then. It seems like that would be an issue for... Your formal certification role would be done with. I think that's right. If the federal standards wanted to be more stringent than state water quality standards, I don't think that's something the state would have an issue with. Some states would. State of Maine. Any other questions? All right. Thank you very much. Thank you, Your Honors. Mr. Warner, we'll give you three minutes. Thank you, Your Honor. I should be clear to start that Brookfield has been consistent all along that this, quote, late stage submission was consistent with its broader relicensing proposal and was immaterial when I was attempting to accept for the sake of argument this materiality issue. But that's certainly not something Brookfield is ready to concede. You said you could have challenged it, you haven't challenged it, and you were accepting for purposes of this case that it was material and significant. That's what you told us. Is that inaccurate? No, excuse me, Your Honor. I was accepting for the purposes of an exchange with you that my point was... You dropped your challenges in state court to their decision. You're correct that that challenge was unrelated to the materiality of the late stage submission. I guess my point here is that setting aside the issue of the late stage submission, the state had an application for water quality certification. And under the Clean Water Act, it has to act on that application within a year. There's nothing in the Clean Water Act that says unless an applicant provides a supplement to the state or updates the state on its ongoing consultations with federal agencies, the state just has to act on that application. Now, presumably, if Brookfield or any other applicant wanted to amend his proposal in a material way or withdraw his proposal or file a whole new proposal, it would withdraw the existing proposal rather than asking the state to go through the process of rejecting something that no longer... or acting on something that no longer mattered. Here, however, that is not what happened because Brookfield's relicensing proposal had been before the state for a year, and Brookfield had no intention of withdrawing it, and had simply attempted to update the state on its ongoing consultations with the federal agencies. Again, something that's fairly routine. The state was obligated under the Clean Water Act to act on the application before it, however it viewed the supplement, within that one-year deadline. In terms of... Can I just ask a quick question? Of course. Now that at least the biological opinion is out, and I don't know if you've done anything in response to the draft EIS from FERC, have you all made more changes in your proposal in response to... Obviously not submitted to me, but more changes? No, Your Honor. The proposal is... Well, Brookfield's proposal is the same, my understanding... As a September submission. As a September submission, my understanding is that the biological... The FERC environmental impact statement, the draft last month, would add a few additional minor measures. But you haven't changed your submission from September. That's correct, Your Honor. And so I guess I also wanted to just quickly speak to syntax here. The reason I started my portion of today off by emphasizing whether... Or asking whether and means and is that there's only one way for doing syntax that and can mean and here. And it's if we read element one to be saying that when an applicant fails to meet its burden, this means the discharge will not comply. Our position is just that that's a perfectly sensible way to read the first element. The only way that gives... Allows and to carry its plain meaning and the only way that's consistent with the intent of the EPA when drafting these rules, as explained in the introduction to the rules. Any more questions? Thank you very much. The case is submitted.
judges: Millett, Katsas, Childs